FILED
JAN 24 2019
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: ___RS___ DEPUTY

Jose Velez
3936 S. Semoran Blvd #317
Orlando, FL 32822
Tel.: (407) 456-4880
Fax Number: n/a
Email:  jvelez2@protonmail.com
*Plaintiff In Propria Persona*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE VELEZ, <br><br> Plaintiff, <br><br> vs. <br><br> RAFFAELLO RISTORANTE, INC., MKCPY INC., SLOOPY'S INC, Does 1-10, inclusive. <br><br> Defendant(s) | Case No.: 2:19-CV-00558-RSWL-PLAx <br><br> COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES |

Plaintiff, JOSE VELEZ hereby complains and alleges as follows:

### NATURE OF THE ACTION

1. This is an action seeking to remedy unlawful discrimination by the Defendants against the Plaintiff in the Defendants' place of public accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA") and the Unruh Civil Rights Act, Civil Code § 51, et seq. (the "Unruh Act"). *see also* <u>Langer v. San Pedro Street Properties, LLC</u>, Civil No. 2: 17-cv-08780-ODW (AFM) (C.D. Cal. Nov. 8, 2018).

RECEIVED
CLERK, U.S. DISTRICT COURT
JAN 22 2019
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

2.  This lawsuit is necessary because the Defendants failed to remove accessibility barriers and because the Defendants continue to maintain barriers in violation of the ADA and the Unruh Act as described herein. Before institution of this civil action, Plaintiff sent a letter to the defendant without any monetary demand, but an invitation to discuss compliance with the ADA.

3.  Plaintiff personally encountered the barriers in violation of the ADA and the Unruh Act described herein and took photos of the barriers with his iPhone. The metadata of the digital images confirm the geolocation of the images, where the barriers are located. The metadata of the images will confirm the date of Plaintiff's physical presence at the facility. Plaintiff physical presence at the facility and encounter with the barriers is also corroborated because Plaintiff personally paid with his credit card at the defendants' facility and his credit card statement, as well as defendants' bank statement, will confirm this information. A purchase receipt is available for inspection.

**PARTIES**

4.  Plaintiff, Jose Velez, is a person with mobility-related limitations because morbid obesity (approximate BMI: 44.4), a "disability" within the meaning of the ADA and the Unruh Act. Taylor v. Burlington N. R.R. Holdings Inc., 904 F.3d 846, (9th Cir. 2018). His additional weight on his frame makes it more difficult to breathe, walk, stand, and bend. Plaintiff also suffers difficulty in bending, kneeling, stooping, lifting and carrying. The problems with executing these basic physical tasks creates limitations in maintaining strength and mobility, as well as in performing basic activities of daily living. Plaintiff's increased body weight does interfere with his normal musculoskeletal function through a variety of kinetic and kinematic impairments, which causes impaired balance, abnormal gait patterns and increased incidence of muscle weakness. Because of this, Plaintiff is in

increased risk for falls. Plaintiff's gait is compromised through reduced velocity, cadence, step width, and step length, as well as stance duration. Problems with executing these basic physical tasks creates limitations in maintaining strength and mobility, as well as in performing basic activities of daily living. Plaintiff also uses an altered strategy for sit-to-stand (and vice versa) due to back pain, lack of strength, and lack of balance. Plaintiff's Morbid obesity is, by itself, a "disability" because it is a physical impairment: a condition that affects one or more body systems (neurological, musculoskeletal, respiratory, cardiovascular, ability to walk, stand, run, bend). Plaintiff's increased body weight in his body causes increased incidence of muscle weakness on his arms, which is a limitation for maintaining strength on his arms to, for example, reach an extremely high service counter, transferring to/from the toilet.

5.  The business establishments at issue in this complaint discriminated against Plaintiff and prevented Plaintiff from enjoying full and equal access thereto due to the existence of unlawful architectural barriers that violate the ADA as described in more detail herein.

6.  Defendant, RAFFAELLO RISTORANTE, INC, owns, operates, or leases a real property located at 400 S Pacific Ave, San Pedro, CA 90731. Defendant, MKCPY INC., owns, operates, or leases a real property located at 1816 W Olive Ave Burbank, CA 91506. Defendant, SLOOPY'S INC. owns, operates, or leases a real property located at 3416 Highland Ave., Manhattan Beach, CA 90266. These properties, collectively referred to as the "Subject Property," share common violations to the ADA unless otherwise indicated. The properties were visited during Plaintiff's trip to California in December 2018. There are common issues of law and fact such as the applicable regulations and defenses by the defendants.

7.      The Subject Property is a facility open to the general public, a public accommodation, and a business establishment insofar as it provides goods and/or services to the general public.

8.      Defendant Does 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to the Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those Defendants.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4) for violations of the ADA.

10.     This Court has supplemental jurisdiction over the state law claims alleged herein under the Unruh Act because the state law claim is an attendant and related cause of action that arises from the same nucleus of operative facts and arising out of the same transaction or occurrence as the federal law claims set forth herein.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) based on the fact that the real property that is the subject of this action is located in this district and the Plaintiff's causes of action arose in this district.

## STATEMENT OF FACTS

12.     The ADA establishes different standards depending on when the facility was constructed and whether the facility has been altered since January 26, 1992. 28 C.F.R. §§ 36.401, 36.402.   Existing facilities are required to remove barriers to access for persons with disabilities where removal is "readily achievable."    42 U.S.C. § 12182(b)(2) (A)(iv); 28 C.F.R. § 36.304.

Facilities designed and constructed for first occupancy after January 26, 1993, must be accessible to persons with disabilities unless the entity can demonstrate that it is "structurally impractical." 42 U.S.C. § 12183(a). Finally, alterations after January 26, 1992 must be made to ensure that, to the "maximum extent feasible," the altered portions of the facility are accessible. 28 C.F.R. § 36.402(a)(1).

13.   The original ADA design Standards were first published in 1991 and are set forth at 28 C.F.R. Part 36, Appendix A (the "1991 Standards"). The new ADA design Standards were first published in 2010 and are set forth at 28 C.F.R. Part 36, Subpart D (the "2010 Standards"). Both Standards are available at www.ada.gov. New construction and alterations commenced between September 15, 2010, and March 15, 2012, must comply with either the 1991 Standards or the 2010 Standards. All new construction and alterations commenced on or after March 15, 2012 must comply with the 2010 Standards.

14.   Plaintiff alleges on information and belief, the Subject Property was designed and constructed for first occupancy after January 26, 1993. *See* 28 C.F.R. § 36.401.

15.   Plaintiff alleges on information and belief, the Subject Property is located in a facility that was constructed after January 26, 1993. S*ee* 28 C.F.R. § 36.401.

16.   On information and belief, the Subject Property undergone alterations after January 26, 1992. The term "alterations" includes, but is not limited to, remodeling, renovation, rehabilitation, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full height partitions. Normal maintenance, re-roofing, painting or wallpapering, asbestos removal, or

changes to mechanical or electrical systems are not alterations unless they affect the usability of the building or facility.  *See* 28 C.F.R. § 36.402(b).

17.    Alternatively, if the Subject Property was *not* designed and constructed for first occupancy after January 26, 1993, the Subject Property is an existing facility required to remove barriers to access for persons with disabilities where removal is "readily achievable."  42 U.S.C. § 12182(b)(2). The ADA provides that, when assessing whether barrier removal is "readily achievable," the factors to consider include the "resources" of the facility, 42 U.S.C. § 12181(9)(b), which includes "the overall financial resources of any parent corporation or entity," 28 C.F.R. § 36.104.

18.    Service counters, seating areas and restrooms are among the facilities, privileges and advantages offered by the Defendants to patrons of the Subject Property.

19.    The Subject Property is not fully accessible to Plaintiff or similarly situated persons with mobility disabilities to the barriers at the Subject Property.

20.    On information and belief, on or around December 1, 2018 (when Plaintiff visited the property), and continuously from that time to the present, and currently, the property located at 400 S Pacific Ave, San Pedro, CA 90731was not in compliance with the ADA:

   i.    Restroom – signage (2010 ADA Standards for Accessible Design – 216.8): Toilet rooms are available to the public. Not all toilets rooms are accessible and there are no signs at inaccessible toilet rooms that give directions to accessible toilet rooms.

   ii.    Restroom – clearance around the water closet (2010 ADA Standards for Accessible Design – 606.5, 604.8.1.1): the clearance provided around the water closet does not measure at least 60 unobstructed inches from the side wall. Possible readily achievable solution: alter the room for clearance because the brown cabinet is an obstruction.

   iii. Restroom – grabs bars (2010 ADA Standards for Accessible Design – 604.4, 604.5): there is no rear grab bar.

   iv. Restroom – clearance below lavatory. Under Section 306.2, no less than 17 inches and no greater than 25 inches of the clear floor space extend under the lavatory. Lavatory does not comply with Section 306.2 because there is a brown cabinet below.

21. On information and belief, on or around December 4, 2018, and continuously from that time to the present, and currently, the property located at 1816 W Olive Ave Burbank, CA 91506was not in compliance with the ADA:

   i. Restroom – clearance around the water closet (2010 ADA Standards for Accessible Design – 606.5, 604.8.1.1): the clearance provided around the water closet does not measure at least 60 unobstructed inches from the side wall. Possible readily achievable solution: alter the room for clearance or establish policy to maintain the clear floor space near the toilet free of foreign objects (the obstruction is a trash container with a clear plastic bag; the lavatory is also an obstruction).

   ii. Restroom – grabs bars (2010 ADA Standards for Accessible Design – 604.4, 604.5): the grabs bars (both the rear and side grab bars) are not properly installed.

   iii. Restroom – pipes below the lavatory (2010 ADA Standards for Accessible Design – 309.3, 308). The pipes below the lavatory and not insulated or otherwise protected against contact. Possible readily achievable solution: install an inexpensive insulation below the lavatory. Plaintiff is aware of this specific barrier but it did not cause him difficulty or discomfort.

   iv. Restroom - the flush control of the toilet is not on the open side of the water closet. (2010 ADA Standards for Accessible Design – 604.6).

     v. Restroom – the mirror located inside the restroom. The bottom edge of the reflecting surface is higher than 40 inches above the floor. (2010 ADA Standards for Accessible Design – 603.3).

     vi. Restroom - paper dispenser – it is over an obstruction and higher than 48 inches above the floor. Section 308.2.

     vii. Restroom – toilet paper dispenser – it not within reach; extremely far away from the toilet area.

22. On information and belief, on or around December 1, 2018 (when Plaintiff visited the property), and continuously from that time to the present, and currently, the property located at 3416 Highland Ave., Manhattan Beach, CA 90266 not in compliance with the ADA:

     i. There is not at least one route from site arrival point, the public sidewalk, that does not require the use of stairs. See 2010 ADA Standards for Accessible Design – 206.2.1 There is a vertical rise at the entrance.

     ii. Reception area (near where the fire is located). There is not at least one space at least 36 inches wide by at least 48 inches long for individuals with disabilities. Section 802.1.2, 802.1.3.

     iii. Sales & service counter (2010 ADA Standards for Accessible Design – 904.4.1): All portions of the counter are higher than 36 inches above the floor. Possible readily achievable solution: lowering a section of the counter.

     iv. Restroom – clearance around the water closet (2010 ADA Standards for Accessible Design – 606.5, 604.8.1.1): the clearance provided around the water closet does not measure at least 60 unobstructed inches from the side wall because of an obstructing lavatory. Possible readily achievable solution: alter the room for clearance or relocate the lavatory.

v. Restroom – grabs bars (2010 ADA Standards for Accessible Design – 609.3): the grabs bars are not properly located because there are not at least 12 inches clearance between the grab bar and protruding objects above. Above the side grab bar, there is a toilet paper dispenser (a separate violation); above the rear grab bar, there is a dispenser of toilet seat covers.

vi. Restroom – toilet paper dispenser (2010 ADA Standards for Accessible Design – 604.7). The toilet paper dispenser is not located no less than 7 inches and no greater than 9 inches  from the front of the water closet to the centerline of the dispenser. This violation makes in unnecessarily difficult for Plaintiff to reach the paper.

vii. Restroom – clearance below lavatory. Under Section 306.2, no less than 17 inches and no greater than 25 inches of the clear floor space extend under the lavatory. Lavatory does not comply with Section 306.2 because there is a cabinet below the lavatory.

viii. Restroom - the flush control of the toilet is not on the open side of the water closet. (2010 ADA Standards for Accessible Design – 604.6).

ix. Restroom – the mirror located inside the restroom. The bottom edge of the reflecting surface is higher than 40 inches above the floor. (2010 ADA Standards for Accessible Design – 603.3).

23. Plaintiff, needs the additional space, as required by the ADA, near the toilet Because of Plaintiff's additional mass on his frame extremely outside the normal range. Because of Plaintiff's limited ability to stand after using the toilet, he uses an altered strategy for stand-to-sit due to back pain, lack of strength, and impaired balance. For Plaintiff, grabs bars are necessary because they help him maintain balance while standing or maneuvering near the toilet, they assist him in transferring into and out of the toilet, and generally help him mitigate slips and falls when using the toilet. This is only

an example of how some of the barriers are related to Plaintiff's disability for pleading purposes. A more detailed description will be provided as part of the discovery and at trial.

24.     Maintenance and procedures to keep unobstructed clearance space is not structural in nature, it is a maintenance and policy issue that involves human discretion. It is well established that voluntary cessation of allegedly illegal conduct in the face of litigation does not deprive the court of the power to hear the case and issue injunctive relief. United States v. W.T. Grant, Co., 345 U.S. 629 (1953); see also County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (a dispute is not moot unless there is no expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged. No interim events have irrevocably eradicated the effects of the violation, because defendant is free, at his discretion and at any time, to fail to provide adequate maintenance and cause obstructions.

25.     The Plaintiff personally encountered architectural barriers that constitute ADA violations at the Subject Property and was denied full and equal access because of the violations.

26.     From that date to the present, the Plaintiff has been deterred from the Subject Property because of his knowledge of the existence of barriers that violate the ADA.

27.     The existence of access barriers and ADA violations at the Subject Property caused the Plaintiff unnecessary difficulty and discomfort.

28.     Plaintiff will return to Subject Property after obtaining injunctive relief for the purpose of monitoring the alterations at the property and enforcing any order entered by Court by, among others, testing the property for ADA compliance. see Civil Rights Education and Enforcement Center v. Hospitality Properties Trust, No. 16-16269 (9th Cir Aug. 7 2017) (holding

that there is constitutional standing where a plaintiff's *only* motivation for visiting a facility is to test for ADA compliance).

29.    Plaintiff intents to visit the Subject Property and the business establishments thereat and intends to do so but will be deterred from doing so until the violations are cured.

30.    On information and belief, the violations identified above are readily achievable. The Department of Justice describes many of these kinds of barriers as presumptively readily achievable to remove and Plaintiff contends that the removal of them is easily accomplishable without much difficulty or expense. Likewise, even if strictly compliant barrier removal were not achievable, there are many kinds of alternative accommodations that could be made to provide a greater degree of accessibility to the Plaintiff and similarly situated persons with mobility disabilities.

31.    On information and belief, Plaintiff alleges that the failure to remove barriers has been knowing, willful and intentional because:

   i.    The barriers described herein are clearly visible and tend to be obvious even to a casual observer;

   ii.   Defendants historically failed to acknowledge that ADA compliance it not a one-time effort, but an ongoing obligation. They refused to promptly remove barriers or create alternative accommodations;

   iii.  The Defendants operate the Subject Property and have control over conditions thereat. They have, and have had, the means and ability to make the necessary remediation of access barriers if they had ever so intended.

   iv.   Today, businesses have an obligation to become accessible, and there is a consequence if they do not: they could be sued. Defendant failed to be proactive and to provide access on its own. Defendant took a "wait and see" attitude. After 28 years since the ADA was enacted on

July 26, 1990, Defendant was expected to comply with its legal obligations.

v. Defendant ignores the daily experience of thousands of people with disabilities who cannot shop, transact personal business, visit the doctor, or enjoy recreation like most people take for granted, because so many public accommodations across the country, like defendants, have ignored the reasonable requirements of the ADA. The ADA is the difference between participation and exclusion on a daily basis.

vi. Plaintiff was not required to provide a written notice of the accessibility issues. No other civil rights law permits businesses to discriminate without consequence unless and until the victims of discrimination notify the business that it has violated the law. The ADA does not place the heaviest burden for ending discrimination on the very people the law is there to protect.

vii. The ADA is already very carefully crafted to take the needs of business owners into account. Compliance is simply not burdensome. The careful compromise originally designed by a bipartisan Congress in 1990, provides that existing businesses are only required to provide access when doing so is readily achievable. Establishing and running a business necessitates compliance with many laws and rules—that is the cost of doing business. It is unthinkable that we would delay or eliminate consequences for small businesses that failed to pay taxes or meet health and safety codes. Violating the rights of people with disabilities should be treated no differently

viii. There are extensive federal efforts to educate business owners about their ADA obligations, including the in-depth DOJ ADA website (**ada.gov**), the DOJ ADA hotline, extensive DOJ technical assistance materials, and the ten federally-funded regional ADA Centers that

provide in-depth resources and training in every state (**adata.org**). Yet defendant have made no meaningful, proactive effort to comply with the ADA.

ix. Defendants failed to acknowledge that the ADA accessibility standards are extremely important. They are not minor details or picky rules, but rather, are essential to ensure true accessibility. A doorway that is too narrow can be the difference between accessing a business or not. A too-short bathroom grab bar can be the difference between using a restroom or being forced to go without a restroom. That said, it is important to point out that to impose liability under the ADA, the barrier does not need to completely preclude plaintiff from entering or using the facility; it need only *interfere* with the plaintiff's full and equal enjoyment of the facility. See Lobato v. Gomez, Civil No. 15-0686 (E.D. Cal. Oct. 31, 2016); Moeller v. Taco Bell Corp., 816 F.Supp.2d 831, 848 (N.D.Cal.2011) (citing Doran v. 7-Eleven Inc., 524 F.3d 1034, 1041 n. 4 (9th Cir.2008) (discussing that the ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access.")). "Because the ADAAG establishes the technical standards required for `full and equal enjoyment,' if a barrier violating the ADAAG relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes `discrimination' under the ADA, thereby violating the ADA." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 947 (9th Cir.2011). s

x. People with disabilities are known to experience a loss of dignity, independence, personhood and pride associated with segregation and lack of access to public accommodations. *see* Kevin I. Coco, Beyond the Price Tag: An Economic Analysis of Title III of the Americans with Disabilities Act, 20 Kan. J. L. & Pub. Pol'y 58, 76, 85 (Fall

2010). Access barriers and segregation in the retail context create social stigma and undermine feelings of self-worth and independence of persons with disabilities. *see* Stacey Menzel Baker, Jonna Holland and Carol Kaufman- Scarborough, How Consumers with Disabilities Perceive "Welcome" in Retail Servicescapes: A Critical Incident Study, 23 J. of Serv. Marketing 160, 167-168 (2007). They also cause people with disabilities to have a negative overall reaction to the whole retail environment, and to experience fear and discomfort in that environment. *see* Carol Kaufman-Scarborough, Reasonable Access for Mobility-Disabled Persons is More Than Widening the Door, 75 J. of Retailing 479, 483, 494 (1999). Studies confirm that the greater the perceptions of one's disabilities as a preventive factor in participation in the marketplace, the less satisfied one is with life. *see* Carol Kaufman-Scarborough and Stacey Menzel Baker, Do People with Disabilities Believe the ADA Has Served Their Consumer Interests?, 39 J. of Consumer Aff. 1, 24 (Summer 2005).

xi. Plaintiff vehemently rejects the proposition that private enforcement of the ADA is not legitimate, regardless of the size of the business. Compliance with the ADA's physical accessibility standards requires business owners and other places of public accommodation to take proactive steps and, often, to incur costs. Unfortunately, here, the ADA's threat of injunctive relief was not sufficient to guarantee voluntary compliance. Defendant erroneously assumes that barrier removal is more expensive than it is, and underestimates the amount of new patronage that would result from making their businesses accessible.[1] An owner's assessment of the costs and benefits of

---

[1] See also, Michael Ashley Stein, The Law and Economics of Disability Accommodations, 53 DUKE L.J. 79, 124–27 (2003).

accessibility may be skewed by prejudice against or stereotyping of people with disabilities, even if the prejudice or stereotyping is unconscious. *see* Samuel R. Bagenstos, <u>Subordination, Stigma, and "Disability,"</u> 86 VA. L. REV. 397, 423–24, 438–42. (2000). The ADA was not enough to convince defendant to comply with the law and the goal of this lawsuit is to see that they finally do.

32.  Access barriers at the Subject Property are being consciously ignored by the Defendants; the Defendants have knowingly disregarded the ongoing duty to remove the barriers in compliance with the ADA.

33.  Plaintiff alleges on information and belief that there are other ADA violations and unlawful architectural barriers at the Subject Property that relate to his mobility disability.

34.  Plaintiff hereby seeks to remediate and remove all barriers related to his disability, whether presently known or unknown. As the court held in <u>Doran v. 7-11. Inc</u>., 506 F.3d 1191 (9th Cir. 2008):

> "[W]here a disabled person has Article III standing to bring a claim for injunctive relief under the ADA because of at least one alleged statutory  violation of which he or she has knowledge and which deters access to, or full use and enjoyment of, a place of public accommodation, he or she may conduct discovery to determine what, if any, other barriers affecting his or her disability existed at the time he or she brought the claim. This list of barriers would then in total constitute the factual underpinnings of a single legal injury, namely, the failure to remove architectural barriers in violation of the ADA, which failure actually harmed the disabled person by deterring that disabled person from visiting a facility that otherwise would have been visited at a definite future time, yielding Article III standing."

35.  The violations and references to code sections herein are not all-inclusive. Plaintiff will amend this complaint to provide a complete description of the full scope of ADA violations after conducting a comprehensive expert site inspection. For the purposes of this Complaint, Plaintiff asserts that the

barriers alleged herein violate one or more of the ADA's implementing regulations.

**FIRST CAUSE OF ACTION**
**Discrimination Based on Disability**
**[42 U.S.C. § 12101, et seq]**
**By Plaintiff against all Defendants**

36.  Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in all prior paragraphs of this complaint.

37.  The ADA obligates owners, operators, lessees and lessors of public accommodations to ensure that the privileges, advantages, accommodations, facilities, goods and services are offered fully and equally to persons with disabilities, including the Plaintiff and others similarly situated [42 U.S.C. § 12182(a)].

38.  Discrimination is defined in the ADA, inter alia, as follows:

   i.  A failure to remove architectural barriers where such removal is readily achievable [42 U.S.C. § 12182(b)(2)(A)(iv)]. Barriers are identified and described in the Americans with Disabilities Act Accessibility Guidelines (the "ADAAG") [28 C.F.R. Part 36, Appendix "D"];

   ii.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities [42 U.S.C. § 12183(a)(2)];

   iii.  Where an entity can demonstrate that the removal of a barrier is not readily achievable, a failure to make such goods, services, facilities,

privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable [42 U.S.C. § 12182(b)(2)(A)(v)].

39.    The ADA, the ADAAG's 1991 Standards (the "1991 Standards") and 2010 Standards (the "2010 Standards"), and the California Building Code (the "CBC") contain minimum standards that constitute legal requirements regarding accessibility at places of public accommodation.

40.    The Defendants have failed to comply with minimum ADA standards and have discriminated against the Plaintiff on the basis of his mobility disability. Each of the barriers and accessibility violations set forth above is readily achievable to remove, is the result of an alteration that was completed without meeting minimum ADA standards, or could be easily remediated by implementation of one or more available alternative accommodations. Accordingly, the Defendants have violated the ADA.

## Failure to Design and Construct an Accessible Facility

41.    Plaintiff alleges on information and belief that the Subject Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

42.    The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

43.    Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.

## Failure to Make an Altered Facility Accessible

44.    Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

45.    The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id. Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

46.    The Defendants are obligated to maintain in operable working condition those features of the Subject Property's facilities and equipment that are required to be readily accessible to and usable by Plaintiff and similarly situated persons with disabilities [28 C.F.R. § 36.211(a)]. The Defendants failure to ensure that accessible facilities at the Subject Property were available and ready to be used by the Plaintiff violates the ADA.

47.    The Defendants have a duty to remove architectural barriers where readily achievable, to make alterations that are consistent with minimum ADA standards and to provide alternative accommodations where necessary to provide access. The Defendants benign neglect of these duties, together with their general apathy and indifference, violations the ADA.

48.    The Defendants wrongful conduct is continuing in that Defendants continue to deny full, fair and equal access to their business establishment and full, fair and equal accommodations, advantages, facilities, privileges and services to Plaintiff as a disabled person due to Plaintiff's disability. The foregoing conduct constitutes unlawful discrimination against the Plaintiff

and other mobility disabled persons who, like the Plaintiff, will benefit from an order that the Defendants remove barriers and improve access by complying with minimum ADA standards.

## SECOND CAUSE OF ACTION
### Violations of the Unruh Rights Act
### [Cal. Civil Code§ 51, et seq.]
### By Plaintiff against all Defendants

49. Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in all prior paragraphs of this complaint.

50. The foregoing violations of the ADA constitute per se violations of the Unruh Act [Cal. Civil Code§ 51(f)].

51. Plaintiff is entitled to statutory damages because he was denied full and equal access to the Subject Property, because he personally encountered access barriers at the Subject Property that discriminated against him on the basis of his mobility disability, because he was deterred from accessing the Subject Property, and because the violations caused him difficulty, discomfort or embarrassment [Cal. Civil Code §§ 52 and 55.56].

52. Plaintiff was denied full and equal access to the Subject Property because he personally encountered ADA violations on a particular occasion.

53. Plaintiff is currently deterred from accessing the Subject Property on occasions due to his actual knowledge of ADA violations that cause unnecessarily difficulties. His actual knowledge reasonably dissuaded him from accessing the Subject Property, which he intended to use on particular occasions and because the violations would have actually denied Plaintiff full and equal access if he had accessed the Subject Property on those particular occasions.

54. Due to the intentional unlawful discrimination set forth above, Plaintiff has been denied the right and entitlement to full and equal accommodations,

advantages, facilities, privileges or services at the Subject Property in violation of the Unruh Act.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays this Court award damages and provide relief as follows:

1.   For injunctive relief compelling the Defendants to comply with the ADA and the Unruh Act.

2.   For damages under the Unruh Act, which provides for actual damages or statutory damages of $4,000 per incident of discrimination; and

3.   For punitive damages under the Unruh act, which provides for exemplary damages per incident of willful discrimination. Cal. Civil Code § 52(b)(1).

4.   For reasonable attorney's fees (counsel will be retained in due course), litigation expenses and costs of suit pursuant to 42 U.S.C. § 12205 and Cal. Civil Code § 52.


Dated this January 16, 2018.


JOSE VELEZ
PLAINTIFF
IN PROPRIA PERSONA

FROM:        JOSE VELEZ

TO:            Office of the Clerk U.S. District Court
               Central District of California

Re:            New Civil Action (In Propria Persona)

DEAR CLERK OF THE COURT:

PLEASE FIND ENCLOSED

- **Summons**:  ORIGINAL plus two copies

- **Civil Cover Sheet:**  Original Plus two Copies

- **Certificate and Notice of Interested Parties**:  Original plus THREE copies.

- **Complaint**:  original plus ONE copy.

    - NOTE:  NO NEED TO SEND ME A COPY. UPLOAD THE COMPLAINT AND I WILL OBTAIN A COPY ON PACER. THANK YOU.

- $400 FILING FEE:  MONEY ORDER.



